**Lottie J. MILLER, Plaintiff–Appellant,**

v.

**FIRSTAR BANK N.A., Defendant–Appellee.**

No. 02–5857.

United States Court of Appeals,
Sixth Circuit.

Sept. 1, 2004.

Rehearing Denied Sept. 27, 2004.

for by statute. [ ] Milacron does not challenge the "other damages" awarded.

John Frith Stewart, Everett C. Hoffman, Segal, Stewart, Cutler, Lindsay, James & Berry, Louisville, KY, for Plaintiff–Appellant.

Roger A. Weber, Patricia Anderson Pryor, Taft, Stettinius & Hollister, Cincinnati, OH, for Defendant–Appellee.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

GIBBONS, Circuit Judge.

Plaintiff-appellant Lottie J. Miller is an employee of defendant-appellee Firstar Bank N.A. ("Firstar"). Miller began working for a predecessor of Firstar, Great Financial Bank ("Great Financial"), in 1982.[1] In 1993, Miller—an African–American female—became manager of Great Financial's Carter Road branch. She continued in that position until 1996, when Great Financial demoted her to relief manager and replaced her with a white male. After receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), Miller filed suit against Firstar alleging that its predecessor, Great Financial, discriminated against her on account of her race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by demoting her in 1996. The district court granted summary judgment to Firstar, which Miller appeals. For the following reasons, we affirm the judgment of the district court.

## I.

Miller began working for Great Financial as a teller trainee in July 1982 at its Tamarack Road branch in Owensboro, Kentucky. Over the years, Miller was promoted to various positions, including teller, savings counselor, and head teller. After many years of service to Great Financial and after a brief stint as temporary manager of the Tamarack Road branch in early 1993, Miller became manager of the Carter Road branch in Owensboro on June 1, 1993.

In 1993, Great Financial charged its branch employees principally with responding to customer requests rather than with actively marketing bank services to customers. Branch managers were responsible only for the day-to-day operations of their respective branches. Great Financial adopted a new approach in 1994, when it decided that all bank employees would actively market the bank's various products and services as part of their job responsibilities. Each employee was now expected to meet personal sales goals, and each branch was expected to meet newly established performance goals. Expectations of branch managers specifically increased. In addition to their traditional managerial responsibilities, branch managers were now expected to meet personal sales goals, which included making a set number of "sales calls" to local businesses each month to market bank services and aggressively selling various of the bank's products, including installment loans, credit insurance policies, and deposit accounts.

Although Miller performed adequately as branch manager prior to 1994, she admittedly experienced problems adjusting to this new "sales culture." Her performance in 1995 was particularly poor. In fact, under her management the Carter Road branch was last in the state in cross-selling in August of 1995.[2] She was not

1. In January 1998, Star Bank, N.A., acquired Great Financial. Star Bank merged with Firstar later that year.

2. Cross-selling was a measurement used by the bank to gauge each branch's sales performance. It measured the average number of products a branch sold per customer.

making her sales calls properly. Her 1995 performance evaluation stated: "[Miller] has been successful in the past where knowledge of products, policies and procedures were primary to a manager's job. With the new team, sales-culture-concept implemented this year, she has been slow to start." The evaluation also conveyed that, "[w]hen the sales culture was implemented in the [Carter Road] branch, the staff responded with improved numbers; however, overall, the goals and objectives have not been met, in part, due to the slow nature of accepting the sales environment and lack of an ongoing plan to increase revenue at the branch." Dean Rodney, then Executive Vice President of Great Financial and responsible for the company's western region in Kentucky (of which the Carter Road branch was a part), addressed his concerns about the Carter Road branch with Miller and suggested that she meet with more successful managers to learn about effective sales strategies. Rodney also warned Miller that she would be replaced if she could not improve the branch's performance.

Miller succeeded in improving the performance of the Carter Road branch in several areas in early 1996. The branch was generally meeting its loan and deposit goals, and bank management complemented Miller on the branch's cross-sell ratios. Yet, Miller herself was still experiencing difficulty adjusting to certain aspects of Great Financial's new sales culture. Specifically, Miller was unable to complete any sales individually as branch manager, and she was still not placing sales calls properly. Also, check deposits made at the branch occasionally arrived late at Great Financial's processing center.

On September 13, 1996, Rodney and Great Financial's Sales Manager Mark Sims met with Miller to discuss the performance of the Carter Road branch. They informed her that the branch was performing below the branch average for the western region in several areas, and they notified her that these below average numbers could not continue. They also informed Miller that the Carter Road branch was going to be expanded and relocated to a new building. Rodney and Sims told Miller that, on account of this expansion, they were raising the goals for the Carter Road branch immediately and that they would be raised again in 1997. Miller was informed that her performance would be monitored on a weekly basis to determine whether she was capable of meeting these new and future expectations. These representations were made to Miller even though Rodney had already submitted a requisition on September 10, 1996, to hire Charles Young, a white male, as manager of the expanded Carter Road branch.

Sims monitored the branch over the next two weeks. He determined that the staff did not adequately understand their responsibilities, that the filing system was less than adequate, and that too many responsibilities were being assigned to the head teller. Sims attributed these deficiencies to failures by Miller.

On September 30, 1996, Rodney and Sims met again with Miller and informed her that she was being demoted from her position as manager of the Carter Road branch to relief manager. Relief managers filled in as managers at different branches on an as-needed basis. Miller accepted the demotion[3] and was replaced as manager of the Carter Road branch by

---

**3.** Some disagreement exists as to when the demotion became effective. Firstar contends it became effective October 1, 1996. Miller avers that the demotion became effective No-

vember 5, 1996. For summary judgment purposes, we construe the evidence in favor of Miller and assume that her demotion became effective November 5.

Young.[4] Miller filed a charge with both the Kentucky Commission on Human Rights and the EEOC on April 27, 1997, alleging that Great Financial discriminated against her on account of her sex and race when it demoted her to relief manager. The EEOC issued Miller a right to sue letter on October 29, 1999.

On January 24, 2000, Miller filed suit in the United States District Court for the Western District of Kentucky against Firstar and Firstar Corporation, its parent company, as successors to Great Financial. Miller alleged that, in demoting her from Carter Road branch manager to relief manager in 1996, defendants discriminated against her on account of her race and gender in violation of Title VII, 42 U.S.C. § 2000e–2(a).[5] On July 2, 2001, defendants filed a motion for summary judgment on Miller's claims.

The district court granted defendants' motion on January 29, 2002. The court found that Miller had no claim against Firstar Corporation because it had never been her employer. Accordingly, the court dismissed all of Miller's claims as against Firstar Corporation. With respect to Firstar Bank, the court found that Miller failed to present any direct evidence of discrimination and that she failed to present a case of discrimination with indirect evidence because she had not met the prima facie requirement of showing that she was qualified for the position from which she was demoted.

On February 8, 2002, Miller filed a motion with the district court pursuant to Fed.R.Civ.P. 59(e) requesting that it alter or amend its judgment. The district court denied this motion on June 6, 2002. Miller then filed a timely notice of appeal on July 1, 2002, contesting the district court's grant of summary judgment to Firstar Bank but not its grant of summary judgment to Firstar Corporation.

## II.

We review a district court's grant of summary judgment *de novo*. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 539 (6th Cir.2003). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir.2003). Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

---

4. Miller was eventually appointed an assistant manager at the bank's Towne Square Mall branch in Owensboro, the position she now holds.

5. Miller also presented a claim relating to her removal as temporary manager of the Tamarack Road branch. When Great Financial selected a permanent manager for that branch in 1993, it selected a white female instead of retaining Miller, which Miller claimed constituted racial discrimination. The district court denied the claim on the ground that Miller did not challenge the employment action in a timely charge with the EEOC pursuant to 42 U.S.C. § 2000e–5(e)(1) and on the ground that Miller could not show that the employment action was part of a continuing violation with the 1996 demotion, which was challenged in a timely charge. While Miller contested the district court's finding that the 1993 employment action was not part of a continuing violation in her brief on appeal, she conceded at oral argument that she could not prevail on this issue. Therefore, her 1993 claim is time barred, and we need not address the merits of the claim in this opinion.

prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To bring a Title VII claim on the basis of indirect evidence,[6] a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case, "a plaintiff must show that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for [her] position, and (4) she was replaced by a person outside of the protected class." *Carter v. Univ. of Toledo,* 349 F.3d 269, 273 (6th Cir.2003). Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory justification for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802. If the defendant meets this burden of production, the plaintiff then bears the burden of demonstrating that the asserted justification is mere pretext for discriminatory motives. *Carter,* 349 F.3d at 273.

## A. Prima Facie Case

The district court found that Miller did not establish a prima facie case of discrimination because she did not provide evidence showing that she was qualified for her position. Specifically, the court determined that Miller failed to produce evidence sufficient to demonstrate that she was meeting Great Financial's legitimate expectations in 1996 as branch manager. On appeal, Miller asserts that the court improperly considered evidence submitted by Firstar in making this determination and that she produced evidence sufficient

to prove she was qualified for the position from which she was demoted.

A plaintiff can show she was qualified for her position by demonstrating that she was meeting her employer's expectations at the time of the challenged adverse employment action. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548–49 (6th Cir.1991). At the summary judgment stage, the question is only whether a reasonable jury could find, *on the basis of the evidence provided by the plaintiff,* that she was qualified for her position. *Cicero v. Borg–Warner Auto., Inc.,* 280 F.3d 579, 585, 587–88 (6th Cir.2002); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000). A court may not consider a defendant's justification for an adverse employment action when evaluating the plaintiff's evidence:

> It is … inappropriate for the district court in the pre-trial stage to rely on the nondiscriminatory reason for [an adverse employment action] to find plaintiff's prima facie case inadequate. This is true even if that "production" evidence happens to show that, in the employer's view, the plaintiff was not meeting its legitimate expectations for the position at issue.

*Cline,* 206 F.3d at 661. Instead of considering a defendant's proffered justification and accompanying evidence when determining whether a plaintiff has presented sufficient evidence to prove that she was qualified, courts should consider such evidence at the pretext stage of the *McDonnell Douglas* inquiry. *Cicero,* 280 F.3d at 587–88.

▮ In determining that Miller was not meeting Great Financial's legitimate expectations, the district court impermissibly considered the justification offered by

---

**6.** Miller does not challenge the district court's finding that she did not present any direct evidence of discrimination.

Firstar for Miller's demotion. Firstar's justification for Miller's demotion is essentially that, based on Miller's past performance, Great Financial did not believe that Miller was suited to manage the Carter Road branch as its operations expanded. Firstar offers various evidence in support of this justification, including evidence that Miller's branch was not organized and that she was not properly making sales calls. The court explicitly considered this evidence in finding that Miller could not show she was qualified to be branch manager. For instance, the court noted: "Plaintiff does not dispute that her sales calls were ineffective or that her branch was disorganized and performed at a below average level." Such justification evidence is precisely the type of evidence that may not be considered at the prima facie stage of the *McDonnell Douglas* inquiry. *See Cicero,* 280 F.3d at 587–88 (finding as error a district court's consideration of defendant's justification evidence at the prima facie stage when the issue was whether plaintiff was qualified). The district court therefore erred by considering this evidence in the process of finding that Miller could not show she was qualified for her position.

■ Nevertheless, we need not resolve whether Miller can otherwise demonstrate that she was qualified for her position because we find that she has failed to present evidence from which a reasonable jury could find that the justification offered by Firstar for her demotion is pretext for discriminatory motives.

## B. Pretext

Although Firstar presents several justifications for its demotion of Miller in 1996, these numerous justifications can all be reduced to the assertion that, based on past poor performance, Miller was not fit to manage the Carter Road branch as its operations expanded. To demonstrate

that this justification is pretext, Miller must show by a preponderance of the evidence that it (1) has no basis in fact, (2) did not actually motivate her demotion, or (3) was insufficient to warrant the demotion. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). Even if Miller can show in one of these three ways that Firstar's justification is not to be believed, however, a factfinder is not required to conclude that discriminatory motives animated the decision to demote her. Indeed, while "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," this inference is not mandatory. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As the Supreme Court has made clear, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Id.* at 146–47 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). In other words, rather than merely "*dis*believe the employer[,] the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Hicks,* 509 U.S. at 519. Consequently, in certain circumstances, "although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory" and, therefore, summary judgment for the defendant will be appropriate. *Reeves,* 530 U.S. at 148.

Miller does not attempt to show that Firstar's justification was insufficient to motivate her demotion. And she cannot, though she attempts to, demonstrate that

the justification has no basis in fact. Indeed, several undisputed facts support the proposition that Miller was not performing adequately so as to continue as manager of the Carter Road branch. First, Miller did not complete any personal branch manager sales during 1996, much less meet her personal branch manager sales goals that year. Second, Miller's sales calls continued to be ineffective, as evidenced by an exchange between Miller and Sims in February of 1996 during which Miller informed Sims that she had not opened any accounts as a result of her sales calls and that she was sometimes speaking only to receptionists or secretaries, which was not the proper way to make sales calls.[7] Third, at least until August of 1996, the Carter Road branch was not consistently dropping off deposited checks at Great Financial's processing center each day in a timely manner as it was required to do, a failure admitted by Miller that resulted in lost revenue for both her branch and the bank.[8] These facts amply support Firstar's proffered justification.

Nor does Miller provide evidence sufficient to show that the justification did not actually motivate her demotion. Miller claims the decision to demote her was actually motivated by the desire to free a branch manager position for a new hire. As evidence of this motivation, Miller notes that a document dated August 20, 1996, signed by Rodney, discusses demoting Miller and replacing her with Young. Then, on September 10, 1996, Rodney approved a personnel requisition for Young. The requisition stated that Young was to be hired as "Branch Mgr. to head up the new Carter Rd. office." Rodney testified that such requisitions were filed when a district president "wanted approval from senior management to bring additional staff on board." Rodney also attested that this personnel requisition represented his "intention as a district president ... to consider [Young] as a branch manager's position [sic] at the Carter Road office." Despite the fact that Rodney was already taking steps to hire Young as branch manager of Carter Road, he and Sims represented to Miller on September 13, 1996, that she could retain her position if she improved the branch's performance. Miller was not informed that she was being demoted until September 30, 1996. She contends that all this evidence supports a finding that Firstar wanted to hire Young, a white male, as a branch manager and then, to make room for him, demoted her. In other words, Miller argues that her demotion was not motivated by Firstar's belief that she was not fit to manage the Carter Road branch as it expanded but was actually motivated by a desire to make room for someone else—Young.

While this evidence suggests Great Financial was less than forthright with Miller about her status as branch manager and that the company took steps to replace Miller while at the same time representing to her that she could retain her position if she improved her performance, these ac-

---

7. Miller claims in her brief on appeal that her sales calls were effective. However, she points to no record evidence that supports this assertion. Such conclusory assertions are not sufficient to demonstrate a genuine issue of material fact necessitating trial. *See Moore v. Philip Morris Cos.*, 8 F.3d 335, 343 (6th Cir.1993). Moreover, the fact that she opened no new accounts as a result of her calls directly refutes her assertion that these calls were effective.

8. Miller asserts in her reply brief that the branch missed a drop off on only one occasion, citing Rodney's deposition testimony. However, this testimony makes clear that the branch "missed its daily drop on several occasions." Additionally, Miller testified that she recalled *"deadlines* being missed," rather than one isolated incident.

tions do not tend to show that Miller's demotion was more likely motivated by discriminatory animus than by Firstar's proffered justification. Nor do they support an inference that Firstar's sole motivation in demoting her was to create a position for a new hire. In fact, the August 20 document actually supports Firstar's justification. The document states at the outset: "With location change at Carter Road, what is strongest staff to maximize success? To what position should we move Lottie Miller? Should we make an offer to Chuck Young? Or move Scott McFarland to Carter Road?" These comments indicate that Great Financial decided to remove Miller from manager of the Carter Road branch because it did not believe that she could "maximize success" as the branch expanded, which is consistent with Firstar's justification. Furthermore, the document suggests that the decision to remove Miller was made prior to any decision regarding who should fill her position. Far from proving that it was more likely than not that Miller was targeted on account of her race or sex to make room for Young, the document indicates that Great Financial decided to demote Miller based on her poor performance and only then considered who would replace her, a deduction bolstered by the fact that Young's requisition was not submitted until September 10. In conclusion, we find that Miller has failed to produce evidence that permits a finding that the decision to demote her was more likely animated by impermissible motives than by Firstar's proffered justification.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Firstar.