IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2009 Session

## GERRY G. KINSLER v. BERKLINE, LLC

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Hamblen County**
**No. 06CV148     Thomas J. Wright, Judge**

**No. E2007-02602-SC-R11-CV - Filed September 20, 2010**

CORNELIA A. CLARK, J., concurring in part and concurring in the judgment.

I concur in the judgment affirming the decision of the Court of Appeals because genuine issues of material fact exist precluding summary judgment for the employer. I write separately to reiterate my belief, set forth in my partial concurrence and dissent in Gossett v. Tractor Supply Co., Inc., No. M2007-02530-SC-R11-CV, — S.W.3d — (Tenn. 2010), that the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), need not be abrogated because it is compatible with the summary judgment procedures as set forth in the Tennessee Rules of Civil Procedure and Hannan v. Alltel Publishing Co., 270 S.W.3d 1 (Tenn. 2008). As the facts of this case illustrate, the McDonnell Douglas framework applied along with Hannan at the summary judgment phase enables an orderly evaluation of the evidence.

Pursuant to Tennessee Rule of Civil Procedure 56.04, a moving party obtains summary judgment by "show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As interpreted in Hannan, a party moving for summary judgment and "seek[ing] to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." 270 S.W.3d at 8-9. A moving party cannot merely "challenge the nonmoving party to 'put up or shut up' or . . . cast doubt on a party's ability to prove an element at trial." Id. at 8.

Less than three years ago, we explained how the McDonnell Douglas framework operates at the summary judgment stage in an opinion involving a retaliation case brought pursuant to the Tennessee Human Rights Act ("THRA"):

After an employee establishes a prima facie case of retaliation [including causation], the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the materially adverse action. If the defendant articulates such a reason, the employee, who bears the burden of persuasion throughout the process, must present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee.

Allen v. McPhee, 240 S.W.3d 803, 820-21 (Tenn. 2007) (internal citations omitted). Where the employer has proffered a legitimate reason for the discharge, the employee can show pretext through evidence that (1) the employer's reason lacks a basis in fact, (2) the employer's reason was not the actual motivation for the discharge, or (3) the employer's reason is not sufficient to warrant a discharge. Id. at 823 (citing Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003)). When the employee produces evidence raising a genuine dispute as to whether the employer's stated reason is pretextual, summary judgment is inappropriate. See id.

Here, the employer, Berkline LLC ("Berkline"), challenges the ability of the employee, Gerry G. Kinsler ("Kinsler"), to establish the causation element of his claim. Specifically Berkline argues that Kinsler cannot show that his rejection of Berkline's offer to settle his workers' compensation claim was a substantial factor in Berkline's decision to terminate him. Guy v. Mutual of Omaha Ins. Co., 79 S.W.3d 528, 535 (Tenn. 2002); Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988); see Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993) (applying the elements of common-law retaliatory discharge to a claim involving an employee allegedly terminated for filing a workers' compensation claim). Berkline does not merely "challenge [Kinsler] to 'put up or shut up,'" as Hannan expressly prohibited. See 270 S.W.3d at 8. Instead, Berkline's motion relies on evidence that affirmatively negates—or, stated another way, shows that Kinsler cannot prove—the causal connection between his termination and Berkline's rejection of the offer to settle his workers' compensation claim.[1]

As proof of its legitimate, non-discriminatory reason for Kinsler's discharge, Berkline presents evidence that Kinsler's discharge on January 12, 2006, was based solely on the just-received job site evaluation which showed that Kinsler could not perform the job duties of

---

[1] As the opinions in Gossett acknowledge, in the context of a summary judgment motion on a common-law claim for retaliatory discharge, we have never confronted the question of what the employee must do after the employer has proffered a legitimate reason for the discharge. Nothing in our law would preclude us, however, from importing the pretext analysis that we have developed in the THRA context, based on corresponding federal causes of action.

his old position and had nothing to do with the failed January 9 workers' compensation settlement agreement. Specifically, Berkline provided evidence that Kinsler's original 1992 job description stated a lifting requirement of up to seventy-five (75) pounds. Berkline also produced the results of a "functional capacity evaluation study" conducted on September 25, 2005, after which Kinsler's treating physician imposed a permanent lifting restriction of no more than thirty (30) pounds. Finally, Berkline introduced the job site evaluation conducted on September 21, 2005, by Andrew Smith, a physical therapist. Smith had used information provided by Kinsler, his supervisor, and Berkline's workers' compensation administrator concerning the description of the maintenance multicraftsman position. Smith delivered his evaluation report to Berkline on January 5, 2006. As noted by the lead opinion, this evaluation report concluded that "Mr. Kinsler presently does not have the functional capacities or capabilities to perform all of the essential duties or meet all of the physical demand requirements of a Maintenance Multicraftsman." Berkline contends that it was the opportunity to review this report, which merely coincided in time with the failed workers' compensation settlement proceeding, that resulted in the determination to discharge Kinsler. Furthermore, Kinsler concedes in his deposition that the position requires lifting beyond his restriction, and no fact dispute exists about the timing of the receipt of the report. The foregoing evidence is sufficient under McDonnell Douglas to shift the burden of production to Kinsler to show that Berkline's reason for discharging him was pretextual.

To satisfy this burden, Kinsler maintains that the lifting limits set forth in the written job description did not reflect the actual requirements of the job.[2] Although Kinsler conceded there were certain objects he could not lift, he testified that other multicraftsmen were also sometimes unable to lift loads within the seventy-five pound requirement. In those cases, multicraftsmen would work together or make use of tow motors or other equipment.[3]

Kinsler also points to the example of his immediate supervisor, James Gann, whom Berkline retained even though his lifting restrictions fell below the requirements of the written job description. In his position as a maintenance facilitator, Gann supervised all multicraftsmen at Berkline's facility in Morristown. Gann testified that he also performed

---

[2] Indeed, Kinsler testified that, although the job description was originally prepared in 1992, he did not receive a copy of that description until after he had suffered his on-the-job injury in 2005.

[3] Issues regarding the qualifications for a particular job must be addressed with care. Defining the nature of the work and the qualifications and duties of the jobs to be performed are the employer's prerogatives, not the employee's. In Tennessee, employers have long had the right to make independent assessments of the needs of their businesses and of their employees' performance. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1992). In the absence of a contract, employers are likewise not obligated to replace an injured employee's job with another job that the employee can perform. Leatherwood v. United Parcel Serv., 708 S.W.2d 396, 401-02 (Tenn. Ct. App. 1985).

the work of a multicraftsman, sometimes working alongside other multicraftsmen on a daily basis. After a surgically repaired injury to his right shoulder in 2004, Gann was subject to restrictions of occasional lifting of fifty pounds up to waist level and occasional lifting of thirty-five pounds from waist level to overhead height. The written description of the maintenance facilitator position, however, required frequent lifting of up to fifty pounds, and, as mentioned above, multicraftsmen were required to perform occasional lifting of up to seventy-five pounds. Kinsler points out, however, that Berkline did not terminate Gann in 2004 after these lifting restrictions had been imposed, even though he immediately became unable to fulfill the written lifting job requirements. While Berkline contends that Gann's employment in a different position with different lifting requirements is not relevant to Kinsler's termination, it is for the trier of fact to weigh the evidence.[4]

As additional support for pretext, Kinsler offers evidence that his lifting restrictions predate this injury but were never previously made an issue before he declined to settle the workers' compensation case. A March 1984 inter-office memorandum prepared by Ruby Glasscock on Berkline stationery indicates that Kinsler declined to return from a layoff to a position as a final trim trainee because, following a motorcycle accident several years prior, his doctor had instructed him never to lift more than forty pounds continually. Berkline contends that no medical documentation corroborates this permanent lifting restriction. Indeed, the medical records in Kinsler's personnel file are silent as to any such permanent restrictions preceding the on-the-job injury that Kinsler sustained in 2005. Again, however, the trier of fact is responsible for deciding how much weight to assign to this evidence. The court adjudicating a motion for summary judgment can go no farther than determining whether such evidence of pretext actually exists, and, in this case, it does. Kinsler has met his burden of producing evidence of pretext. Applying the McDonnell Douglas framework and the procedures adopted in Hannan, I agree with the lead opinion that a genuine issue of material fact remains as to whether Kinsler's rejection of the offer to settle his workers' compensation claim was a substantial factor in Berkline's decision to terminate his employment.

---

[4] When an employee bases a claim of retaliation or discrimination on the argument that other employees received different treatment, it is, of course, appropriate, to require that the other employees were working at jobs that are substantially similar to the plaintiff's position. When an employee relies upon the employer's treatment of other employees to counter an employer's legitimate, non-retaliatory or non-discriminatory reason for its employment decision, the job duties of the other employee(s) need not be identical but should at least be similar. Cf. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-61 (5th Cir. 2009); Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). In this case, at least for the purpose of summary judgment, it is appropriate to consider Gann's position of maintenance facilitator as substantially similar to the maintenance multicraftsman position that Kinsler held. At trial, however, Berkline may introduce evidence to convince the trier of fact that the positions are not substantially similar.

In summary, as explained in my partial concurrence and dissent in <u>Gossett</u>, dispensing with the <u>McDonnell Douglas</u> framework at the summary judgment phase in all employment discrimination and retaliation cases is unnecessary. As the foregoing analysis illustrates, the <u>McDonnell Douglas</u> framework enables an orderly analysis of the evidence and operates consistently with our law on summary judgment. We should adhere to that framework. Nonetheless, because there is adequate evidence of pretext to establish a genuine issue of material fact, I concur in the judgment affirming the decision of the Court of the Appeals.

I am authorized to state that Justice Koch concurs in this opinion.

_____
CORNELIA A. CLARK, JUSTICE