NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0112n.06

Case No. 17-5346

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 06, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DERICO GOLDEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MIRABILE INVESTMENT | ) | TENNESSEE |
| CORPORATION, a Domestic Corporation, | ) | |
| d/b/a Burger King, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: KEITH, KETHLEDGE, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiff-Appellant Derico Golden worked as a store manager at a fast-food restaurant for Defendant-Appellee Mirabile Investment Corporation ("MIC"), d/b/a Burger King, until his termination in 2013. Based primarily on interactions with his supervisor, Golden claims that MIC discriminated against him based on his race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Following discovery, the district court granted summary judgment in favor of MIC on all claims except Golden's claim that there was direct evidence that his termination was motivated by racial animus. A jury later found in MIC's favor on that claim. Golden now appeals the unfavorable ruling on summary judgment and an evidentiary ruling at trial. We **AFFIRM**.

I.

A.

Golden began working for MIC in September 2010 as a fast-track manager, and, in December of that year, was transferred to Burger King's Summer Avenue location in Memphis, Tennessee as the general manager. Golden's direct supervisor was district manager Kellie Barksdale, and it is disputed how Barksdale treated Golden throughout his employment. Golden, who is an African-American male, contends that he was denied raises, evaluations, promotions, and vacation days while his white and female counterparts received those benefits.[1] Golden contends that Barksdale made discriminatory comments towards him and his staff. For example, Golden stated in an affidavit that Barksdale would refer to President Barack Obama as "your President," and that because he was her first black male general manager, she referred to him as her "lab rat." (R. 38-3 at PageID # 247.) He also averred that Barksdale said that black managers always failed "because of drugs, some kind of sexual harassment charge, or money missing, or messing with a minor." (*Id.*) MIC disputes these statements.[2]

On February 24, 2013, Golden's assistant manager Marquez Johnson phoned Golden and told him that the store had received a grade of C- during an Operations Excellence Review ("OER/SPOC Inspection"), a failing score. One of the issues that came up in the report was that there was only one drive-thru cashier in operation, leading to a drive-thru window time that did not meet standards. The next day, Golden met with Barksdale to discuss how the store's score could be improved. She instructed him to keep both drive-thru windows open. After Barksdale left, Golden again closed a back drive-thru window, which he contends was because he needed

---

[1] As the district court noted, the documents cited to by Golden to support these contentions either do not exist or do not contain relevant information.

[2] Barksdale denies ever making these comments.

to allow an employee to leave for an emergency. On February 25 or 26, 2013, Golden informed Barksdale about a cash shortage at the store and asked her to come assist in reviewing surveillance video. From the video, it was apparently clear that no one was working the second drive-thru window. Barksdale communicated to Golden that this constituted a failure to follow her orders. On February 26, 2013, Barksdale terminated Golden. MIC contends that Golden was fired for failing to follow Barksdale's instructions. Golden argues that his termination was based on his race and gender, that he was fired because he refused to cut employees' hours "for Obamacare," and that other white or female managers with poor OER/SPOC Inspection scores were not terminated. The parties also disputed who replaced Golden: Golden contends that Johnson, a young black male, replaced him, while MIC avers that Barksdale ran the location herself after Golden's termination.

B.

On May 14, 2014, Golden filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged that MIC discriminated against him based on his race, sex, and age, listing February 26, 2013—the date of his termination—as the "date discrimination took place." (R. 1-1.) The entirety of his charge read:

> I began my employment with the above company on August 28, 2010, as a general manager and was terminated on February 26, 2013.
>
> Kelly Barksdale (White) Manager told me I was being terminated for poor performance. Paul Sipes and Pat Gills (both White) Store Managers scored a C+ on their store evaluations and weren't terminated. Furthermore, Tiny Gandy scored a C- and Lisa Jones scored a C+ (both females) on their store evaluations and they weren't discharged. Moreover, I was replaced by Marquez Johnson (age 23) Assistant Manager. On or around October 2012, I scored a B+ on my store evaluation.
>
> I believe that I have been discriminated against because of my race (Black), and sex (male) in violation of Title VII of the Civil Rights Act of 1964, as amended.

I believe that I have been discriminated against because of my age (40) in violation of [the] Age Discrimination Employment Act (ADEA).

(*Id.*)

After receiving a dismissal and notice of right to sue from the EEOC in March 2014, Golden filed a complaint in the United States District Court for the Western District of Tennessee, alleging that MIC (1) discriminated against him based on his race and sex, in violation of Title VII; and (2) discriminated against him based on his age, in violation of the Age Discrimination in Employment Act ("ADEA"). Golden then voluntarily dismissed his ADEA claim in November 2015. MIC filed a motion for summary judgment on the remaining claims, which the district court granted in part, leaving only his claim that he was terminated based on his race. Following a jury trial on that issue, MIC prevailed.

Golden raises several issues on appeal. First, he challenges the district court's finding that he failed to exhaust his administrative remedies on his hostile work environment claim and his claims that he was discriminated against based on race and sex for promotions, bonuses, raises, leave, different job assignments, and different job standards. It is less clear whether Golden appeals the remainder of the district court's ruling on summary judgment in whole—for example, he does not explicitly aver that the court erred in finding that MIC was entitled to summary judgment on his remaining sex discrimination claims. Despite this ambiguity, the Court will construe his appeal as also challenging the unfavorable rulings related to his remaining discrimination claims that arise from his termination. He also challenges the district court's exclusion of testimony by Golden recounting alleged statements made by MIC's President, Bob Cook. We consider each of these issues in turn.

II.

We review *de novo* a district court's grant of summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party, *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014), and determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Once the moving party has borne the initial burden of establishing that there are no genuine disputes of material facts, the nonmoving party must present "significant probative evidence" that establishes "more than . . . some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The existence of "a scintilla of evidence" favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar*, 876 F.3d at 851 (citing *Anderson*, 477 U.S. at 252).

A.

We must first consider whether Golden exhausted his administrative remedies as to each claim he raises on appeal. An employee that alleges discrimination must first file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). This requirement serves to put employers on notice and gives the EEOC the opportunity to investigate or settle the dispute. *Id.* In considering whether a plaintiff adequately included a claim in his

EEOC charge, the Court construes the EEOC complaint liberally, and "consider[s] claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362. "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

Golden argues that the district court erred in concluding that his disparate treatment claims were not sufficiently related to his EEOC charge to put MIC on notice. We look to the language included in Golden's EEOC charge, which describes only allegations related to Golden's termination. The charge raises no facts that refer to experiences during any of his employment prior to his termination. While it is not necessary that the charge specifically invoke his other claims of disparate treatment, the additional claims must, at a minimum, "reasonably relate[] to or grow out of the factual allegations" stated in the charge. *Younis*, 610 F.3d at 362. That is not the case here. Golden's claim that he experienced a hostile work environment and his claims that he was denied promotions, bonuses, raises, and better job assignments because of his race or gender patently do not grow out of or reasonable relate to his termination, which is the basis of his EEOC charge.

Moreover, even construing Golden's charge liberally, the generic charge of race and sex-based discrimination on the date of his termination simply would not otherwise "prompt the EEOC to investigate" hostile work environment claims or discrimination claims based on promotions, raises, leave or job duties. *See Davis*, 157 F.3d at 463-64 (citing *Farmer v. ARA Servs, Inc.*, 660 F.2d 1096, 1105 (6th Cir. 1981)) (noting *Farmer* as an example where equal pay claims were reasonably related to claims in which female plaintiffs were seeking to secure jobs that were preferable in terms of hourly wage and length of work day). For this Court to find

otherwise would undermine the standard set by *Younis* and permit any generic one-issue EEOC claim to cover all other forms of discrimination in the workplace. *See id.* at 464 ("The charge filing requirement would be written out of the law, and the triggering and conciliation functions disabled, were we to accept Davis' argument."). We therefore find that it was proper for the district court to limit Golden's Title VII claims to those relating to his termination. As a result, the remaining claims were not made to the EEOC, and Golden did not exhaust his administrative remedies.

B.

We turn to the merits of Golden's remaining claims. Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When pursuing a discrimination claim under Title VII, a plaintiff may show the discriminatory intent of his or her employer through either direct or circumstantial evidence. *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 346 (6th Cir. 2012). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). Meanwhile, circumstantial evidence does not "on its face establish discriminatory animus," but discrimination may be reasonably inferred. *Id.* at 649 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). The district court concluded at summary judgment that Golden established sufficient direct evidence of racial discrimination related to his termination. The court otherwise concluded that there was an insufficient showing that Golden's gender was a

motivating factor in his termination and that Golden also failed to establish a prima facie case by circumstantial evidence on either his sex or racial discrimination.

First, Golden appears to argue that he established direct evidence of sex discrimination based on alleged statements made by Barksdale. Golden contends that Barksdale allegedly told him a female manager was paid more than him because she "needed the extra money because her husband lost his job, she had responsibilities, she had kids and bills to pay, and one of their vehicles was down." (Appellant's Br. at 22.) Even if Barksdale had indeed made that statement, and we determined it was in sufficient proximity to his termination, it does not provide direct evidence that Golden was *terminated* based on his gender. Direct evidence proves the existence of discrimination "without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Golden presents no evidence of discrimination that does not require an inference the Court is not at liberty to make—that Barksdale's comments indicate that Golden's gender was a motivating factor in his termination.

Golden also argues that the district court erred in finding that he did not establish his race and sex discrimination claims by circumstantial evidence. Title VII claims proceeding based on circumstantial evidence are analyzed under a burden-shifting framework first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). "The burden is first on the plaintiff to demonstrate a prima facie case of [] discrimination; it then shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions; finally, the burden shifts back to the plaintiff to show pretext—i.e. that the employer's explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). To demonstrate a prima facie discrimination case, a plaintiff must show that: "(1) he or she was a member of a protected class;

(2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). For a sex discrimination claim, the fourth factor is limited to the plaintiff being "treated differently than similarly-situated [] employees [of the opposite gender]." *Jacklyn*, 176 F.3d at 928-29 (applying the remaining factors to Title VII sex-discrimination claims).

The district court concluded that Golden failed to demonstrate the fourth prong of the prima facie case as to either his racial or sex discrimination claims—that he was replaced by someone outside his protected classes or that he was treated differently than similarly-situated non-protected employees. First, Golden's only evidence that he was treated differently than similarly-situated employees is based on the fact that other managers received low OER/SPOC Inspection scores but were not terminated. Yet neither Golden nor MIC contend that Golden's low score is the sole reason for his termination. He presents no evidence, for instance, that other managers disobeyed an order from Barksdale but were not fired.

Nonetheless, Golden argues that he can establish a prima facie case as to his racial discrimination claim. Golden contends there is at least a dispute of material fact as to whether he was replaced by someone outside of his protected class. At the district court, Golden contended that Johnson, a black male, replaced him. On appeal, however, Golden relies on MIC's asserted fact from its motion for summary judgment that it "did not hire a replacement for Plaintiff," and that, instead, Barksdale "ran the restaurant herself." (R. 38-8 at PageID # 391.) Golden now claims that there is at least a dispute of fact as to whether Barksdale was his replacement, who is a white female. But there is no support that Barksdale "replaced" him in the record. "[A] person

is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees . . . ." *Myers v. U.S. Cellular Corp.*, 257 F. App'x 947, 952 (6th Cir. 2007) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)). There is no evidence to support Golden's contention that Barksdale did anything more than perform Golden's prior duties in addition to her own, and, thus, there is no evidence that Golden was replaced at all. Absent a prima facie case that there was circumstantial evidence that Golden was fired because of his race and/or sex, summary judgment in favor of MIC was appropriate.

III.

Finally, Golden appeals the district court's decision to exclude evidence at trial of alleged discriminatory statements made by Bob Cook, the President of MIC. We review a district court's ruling on a contested evidentiary issue for abuse of discretion. *Flagg v. City of Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). A trial judge has "broad discretion on evidentiary rulings," and we will only determine an abuse of discretion exists if we are "firmly convinced that the district court has made a mistake." *Id.* (quoting *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995) and *United States v. Logan*, 250 F.3d 350, 366 (6th Cir. 2001)).

MIC filed a motion *in limine* to exclude testimony from Golden that Bob Cook, the President of MIC, allegedly said to Golden when the air conditioning was out: "It's hot back there. But those people, they're used to it. They can handle it." (R. 68, Page ID # 664-66.) The district court ruled that, because the parties agreed that Barksdale independently made the decision to fire Golden, the statements were irrelevant and inadmissible. Under clear precedent from this Court, this was not an abuse of discretion. *See DiCarlo*, 358 F.3d at 416 (finding that isolated or ambiguous remarks are only direct evidence of discrimination where made by an

individual with decision-making authority); *see also Rowan*, 360 F.3d at 548 (finding that where an inference would be required to associate a comment with someone's race or sex, the comment is not direct evidence of discrimination).

IV.

For the foregoing reasons, we affirm both the district court's order granting partial summary judgment in favor of MIC and the district court's exclusion of certain testimony at trial.