RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0332p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

ROBERT G. BACK,

          *Plaintiff-Appellant,*

        *v.*

NESTLÉ USA, INC.,

          *Defendant-Appellee.*

No. 10-6028

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:08-cv-290—Joseph M. Hood, District Judge.

Decided and Filed: September 13, 2012

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Sara Beth Gregory, Thomas E. Carroll, CARROLL & TURNER, P.S.C., Monticello, Kentucky, for Appellant. Thomas M. Wilde, Elizabeth N. Hall, VEDDER PRICE P.C., Chicago, Illinois, for Appellee.

     STRANCH, J., delivered the opinion of the court in which KETHLEDGE, J., joined, and GWIN, D. J., joined in part. GWIN, D. J. (pp. 14–15), delivered a separate concurring opinion.

_____

## OPINION

_____

     JANE B. STRANCH, Circuit Judge. Plaintiff Robert Back sued his former employer, Nestlé USA, Inc., alleging that the company discriminated against him based on his age by terminating him, thereby violating the Kentucky Civil Rights Act (KCRA),

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Ky. Rev. Stat. Ann. §§ 344.010 to 344.990. The district court granted summary judgment to Nestlé and Back appealed. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Back was born in 1954 and began working in November 1998 as a Maintenance Team Leader for Chef America at its food-processing plant in Mount Sterling, Kentucky. The plant made "Hot Pockets." In June 1999, Back was promoted to Maintenance Superintendent and was responsible for supervising Maintenance Team Leaders.

Nestlé bought Chef America and took over the plant in late 2002 or early 2003. Back continued to work for Nestlé but was moved back to Maintenance Team Leader with no decrease in pay because Nestlé did not recognize the Maintenance Superintendent position. In February 2005, Robert Vernon became the Maintenance Manager of the plant and Back's immediate supervisor. Before then, Back had several supervisors, including Frank Saporito.

The food-processing plant runs five processing lines (lines 4-8) and had three shifts, two production and one sanitation. For each shift, a maintenance team is assigned to the processing, packaging, or refrigeration area. During his last 18 months of employment, Back was responsible for the processing area up to the freezer. He was primarily responsible for line 7, but he worked on all the lines and spent 70% of his time on line 8.

Back directly supervised nine mechanics and was accountable for their performance and for disciplining them. His mechanics ensured that the lines started and stayed running during the shift and that equipment was properly maintained, clean, and functioning. This helped to prevent both food contamination and the lines from going down (referred to in the plant as "downtime"). The mechanics were expected to update Back on equipment functioning and inform him if the line was down for more than 10 minutes. Back was responsible for managing his teams' preventative maintenance,

a schedule by which mechanics inspected various pieces of equipment to maintain the equipment and fix problems before they caused downtime.

Sometime before April 6, 2005, James Hagerman, another Maintenance Team Leader, told Back that "Tim Shelburne told me [Hagerman] that he had been told by higher management that they were planning to get rid of the three oldest employees and highest paid team leaders." The three oldest team leaders were Back, Hagerman, and Frank Willis. Back testified that Shelburne was the acting Human Resources Director when he made this alleged statement to Hagerman.

During the nine combined years that Back worked at the food-processing plant for Chef America and Nestlé, he received both positive and negative reviews. His reviews became increasingly negative in 2006, but even when they were positive overall, he received comments that he needed to delegate more tasks to his subordinates, improve in holding his subordinates accountable, and generally supervise and lead those working under him better so that their skills would grow rather than stagnate as occurred when he did their work for them.

Consistent with his increasingly negative reviews in 2006, Back was disciplined three times in 2006. In August 2006, Vernon disciplined Back for his team's failure to quickly and properly "address two pieces of equipment that showed warning signs of failure during the first shift and ultimately malfunctioned, causing food contamination and downtime on a line." Vernon thought that the two incidents "show a need for Bob to raise the awareness of his team members to the importance of food safety issues. . . . [H]is team should know that they are expected to take immediate appropriate action on issues that can have a direct effect on food safety."

In September 2006, Plant Engineer Saporito disciplined Back for not properly managing his team's preventative-maintenance duties. Back admitted that one of his mechanics failed to properly complete his preventative maintenance on an exhaust fan on the roof. Then, in November, Vernon disciplined Back because he did not know that one of the lines he was responsible for was less than 60% efficient during the day. Back was expected to know when a line was functioning poorly and why. Both the September

and November write-ups warned Back that failure to immediately improve could lead to further discipline. The November write-up specifically warned Back that he could be terminated for further problems.

In April 2007, Vernon suspended Back for five days for downtime issues, noting in the suspension memo that "Bob has been counseled, coached, and even documented for a need to hold his associates to [a] higher level of performance and accountability." He continued:

> Bob needs to be aware that this suspension was in no way caused by shortcomings in his dedication, effort, or personal work ethic. The issues that led to this action were very specific to leadership potential, and higher standards of planning, performance, and accountability. . . . Bob needs to separate himself from the team; needs to be the leader not a member.

In June 2007, an explosion occurred at the plant. Vernon assigned Back to prepare line 7 to run again and complete any preventative maintenance that the line needed. Line 7 failed to start up smoothly and Back admitted that there were start up issues. Vernon then met with Human Resource Manager Anthony Mellone and Human Resources Generalist Adreanne Green to discuss Back's responsibility for the flawed start up. Vernon terminated Back in July 2007 due to Back's history of failing to properly supervise his subordinates and his team's history of failing to meet expectations.

In May 2008, Back sued Nestlé in state court, alleging that Nestlé terminated him because of his age in violation of the KCRA. Nestlé removed the case to federal court based on diversity jurisdiction. Following discovery, Nestlé filed a motion for summary judgment, which the district court granted in August 2010. The district court determined that Shelburne's alleged statement was inadmissible hearsay and that Back failed to establish that he was terminated because of his age. Back timely appealed.

## II. ANALYSIS

### A.        Standard of review

This court reviews a district court's grant of summary judgment de novo. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### B.        Age discrimination

In relevant part, the KCRA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age." Ky. Rev. Stat. Ann. § 344.040(1). "Claims brought under the KCRA are analyzed in the same manner as ADEA claims." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (internal quotation marks omitted); *accord Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).

A plaintiff may establish that the KCRA was violated through either direct or circumstantial evidence. *Williams*, 184 S.W.3d at 495; *see Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (holding that an ADEA violation can be proved in the same way). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citation and internal quotation marks omitted). In a direct-evidence case, the plaintiff must prove "by a preponderance of the evidence . . . that age

was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 & n.4 (2009).

A circumstantial-evidence case involves "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Allen*, 545 F.3d at 394 (internal quotation marks omitted). The three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), is used to analyze age-discrimination claims based upon circumstantial evidence. *Provenzano*, 663 F.3d at 811-12.

> "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). The defendant must then offer sufficient evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.*

*Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). The burden of production shifts during the three-step process, but the ultimate burden of persuasion remains on plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." *Gross*, 129 S. Ct. at 2351 n.4. "In evaluating pretext and the plaintiff's ultimate burden, the court should consider all evidence in the light most favorable to the plaintiff, including the evidence presented in the prima facie stage." *Provenzano*, 663 F.3d at 812.

### 1.    *Direct evidence*

As direct evidence of discrimination, Back offers Hagerman's affidavit which states that "Tim Shelburne told me that he had been told by higher management that they were planning to get rid of the three oldest employees and highest paid team leaders."

Before considering whether this statement constitutes direct evidence, we must decide whether it is admissible. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *abrogated on other grounds by Gross*, 557 U.S. at 178 n.4. In diversity cases, evidence admissibility is governed by the Federal Rules of Evidence. *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir. 1990). The district court found that the statement was hearsay and thus did not consider it on summary judgment. *See Carter*, 349 F.3d at 274 (holding that hearsay evidence cannot be considered on summary judgment). Whether a statement is hearsay is a legal question that this court reviews de novo.[1] *United States v. Boyd*, 640 F.3d 657, 663 (6th Cir. 2011).

Rule 801(d)(2)(D) of the Federal Rules of Evidence includes a scope requirement—a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Relying on *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983), the district court ruled that Shelburne (the declarant) must have been involved in the decision to terminate Back in order for Shelburne's alleged statement to concern a matter within the scope of Shelburne's employment relationship with Nestlé. The court held that Shelburne's statement did not satisfy Rule 801(d)(2)(D)'s scope requirement and was inadmissible on the basis that Shelburne was not involved in terminating Back.

But the district court's interpretation of the scope requirement is too narrow and was flatly rejected by this court's decision in *Carter*. That case involved the admissibility of Professor Carter's hearsay testimony that Murry, the vice provost, had told her that top college administration officials were racists and "trying to get rid of the black professors." 349 F.3d at 272, 275-76. Even though Murry was not involved in the decision to let Carter's teaching contract lapse, his testimony was admissible under Rule 801(d)(2)(D) because his statements about the workforce's racial composition were on a matter within the scope of his employment—overseeing affirmative-action

---

[1] "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Rodriguez-Lopez*, 556 F.3d 312, 314 (6th Cir. 2009) (internal quotation marks omitted).

requirements. *Id.* at 276. A statement is not hearsay under Rule 801(d)(2)(D) when it concerns a matter within the scope of the declarant's employment—there is no requirement that a declarant be directly involved in the adverse employment action. *Id.* at 275-76.

Applying this principle, the question becomes whether Shelburne's statement—that there was a plan to get rid of the three oldest employees and highest paid team leaders—concerned a matter within the scope of his employment as the acting Human Resources Director. That Director is responsible for overseeing the human-resource policies, procedures, practices, benefits, and overall employee relations, and his job includes involvement in employee-performance issues generally and termination specifically. So Shelburne's alleged statement—which relates to terminating employees—plainly concerns a matter within the scope of the Human Resources Director's job and would be admissible under Rule 801(d)(2)(D), barring further evidentiary issues.

But there is another evidentiary concern not addressed by the district court: Shelburne's statement presents a double-hearsay issue. The first level of hearsay is Hagerman swearing in an affidavit that Shelburne (the declarant) told him about the plan to get rid of the three oldest employees. For this level of hearsay, Shelburne's statement qualifies for admissibility under Rule 801(d)(2)(D). The second level of hearsay is higher management (the declarant) telling Shelburne that they are planning to get rid of the three oldest employees. For double-hearsay statements to be admissible, each separate statement must either be excluded from the hearsay definition or fall within a hearsay exception. *See United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005); Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). So unless the statement by management to Shelburne also fits within a hearsay exception or is not hearsay, federal law renders the entire statement inadmissible hearsay.

Admitting higher management's statement to Shelburne is problematic—but not impossible—because the declarant (higher management) is unidentified. *Compare*

*Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002-03 (3d. Cir. 1988) (holding in a similar double-hearsay situation that the statement from the unidentified declarant did not fit within Rule 801(d)(2)(D) because there was not evidence establishing that the statement made by the unidentified individuals ("they") concerned a matter withing the scope of their employment), *with Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997) (holding in a similar double-hearsay situation that statements from unidentified executives were admissible because evidence established that though their precise identity was unknown, they were all "Westinghouse executives who had authority to make personnel decisions [and thus were] act[ing] within the scope of their employment in stating their views on the state of their workforce"). The crucial question is whether there is evidence that the unidentified declarants were speaking on a matter within the scope of their employment. Fed. R. Evid. 801(d)(2); *Ryder*, 128 F.3d at 134; *Carden*, 850 F.2d at 1002-03.

In answering that question, the "statement must be considered but does not by itself establish . . . the existence or scope of the relationship under [Rule 801(d)(2)(D)]." Fed. R. Evid. 801(d)(2). Outside evidence sufficient to satisfy Rule 801(d)(2)(D)'s scope requirement could come from the "circumstances surrounding the statement, such as the identity of the speaker [or] the context in which the statement was made." Fed. R. Evid. 801 advisory committee's notes, 1997 Amendment. But the speaker in the present case is Hagerman because Shelburne himself is a declarant due to the double-hearsay issue. And Hagerman's identity does not grant any greater assurance of trustworthiness because Hagerman was a Maintenance Team Leader just like Back—a position not ordinarily expected to be privy to a plan to terminate other Maintenance Team Leaders. If Back had presented other outside evidence sufficient to satisfy Rule 801(d)(2)(D)'s scope requirement, the statement would be admissible. But because there is no such evidence, the statement is inadmissible hearsay. Fed. R. Evid. 801(d)(2). The district court therefore correctly excluded the statement, albeit for the wrong reasons.

Because the statement must be excluded, Back presents no direct evidence of discrimination.**2**

### 2.      *Circumstantial evidence*

Nestlé concedes for purposes of this appeal that Back has established a prima facie case of discrimination.   And Nestlé has offered evidence of a legitimate, nondiscriminatory reason for terminating Back—his history of failing to properly supervise his subordinates and his team's history of failing to meet expectations.  The burden shifts to Back to "identify evidence [at summary judgment] from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Macy*, 484 F.3d at 364.  Back can prove pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (internal quotation marks omitted).  Back attempts to show pretext through all three avenues.   Significantly, Back cannot rely on Hagerman's affidavit regarding Shelburne's statement of the plan to get rid of the three oldest employees because that evidence is inadmissible, as established above.  Before undertaking this analysis, we note that while these three avenues provide a useful analytical map regarding pretext, the ultimate inquiry during the pretext analysis is "did the employer fire the employee for the stated reason, or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) ("[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination.").

Back argues that Nestlé's reasons for taking the disciplinary actions—write-ups in August, September, and November 2006; his suspension for five days in April 2007; and his termination in July 2007—have no basis in fact.  But here, Nestlé points to particularized facts upon which it relied to show that it "made a reasonably informed and considered decision before taking the complained-of action," *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (internal quotation marks omitted).

---

**2**Back's argument that the statement should be admitted under various Kentucky state cases is unpersuasive because federal law governs the admissibility of evidence in diversity cases. *See Laney*, 901 F.2d at 1320.

Defeating a properly supported summary-judgment motion in these circumstances requires the plaintiff to "produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendants . . . did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. The Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (internal quotation marks and brackets omitted). Undisputed evidence shows that Back fails to meet this burden.

Back argues that the August 2006 write-up disciplining him for his team's failure to quickly and properly address equipment that showed warning signs of failure has no basis in fact because the underlying problem had to do with line 8, which he argues was not his responsibility. But in his deposition he testified that he was responsible for the processing area of the plant, not just line 7, and that he spent 70% of his time on line 8. That Back disciplined the mechanics he supervised after he was disciplined by Vernon is not determinative. Vernon wrote up Back for his failure to properly supervise his mechanics team and impress upon them that they were expected to respond to issues impacting food safety immediately.

Similarly unpersuasive is Back's argument that the lack of preventative maintenance triggering the September 2006 write-up was one of his mechanic's fault rather than his own. While Back was not personally responsible for doing the preventative maintenance, the write-up was for failing to properly manage the preventative maintenance that his mechanics performed. And Back admitted that the mechanic who failed to do the proper maintenance was a member of his team.

Another Back concession undermines his argument that the November 2006 write-up was pretext. Back concedes that his mechanics should have let him know that the line was down for 40% of the day, as it was. The issue flagged in this write-up was that Back was expected to know when and why a line was running that poorly but that he knew neither in this situation.

Regarding his April 2007 suspension, Back argues that he could not recall the specific event and that the only documented reason was the way he handled avoidable

downtime. But as Nestlé argues, Back's inability to recall the specific incident underlying the suspension does not mean that it was not based in fact, especially since the reason is documented in both writing and Vernon's deposition testimony. Back's complaints about the event immediately preceding his termination fare no better. He essentially contends that the problem with starting up line 7 after the explosion was minor. But, as Nestlé argues, he offers no evidence showing that Vernon's displeasure with the start up of line 7—which Back was assigned to after the explosion and which was not one of the more damaged lines—was not based on fact. And Back even concedes that there were some issues with the start up of the line. Back therefore fails to show that the proffered reasons for his termination were not based in fact.

Back next argues that the purported reasons did not actually motivate Nestlé's decision to terminate him. But his primary argument is based on Shelburne's statement, which is inadmissible and cannot be considered at the summary-judgment stage. *See Carter*, 349 F.3d at 274 (holding that hearsay evidence cannot be considered on summary judgment). His only fallback is to argue that other, informal criticisms in his file related to things that were minor or so clearly not his fault that a reasonable person could infer that Nestlé was documenting his file with frivolous events to provide cover to terminate him. But this contention is fatally undermined by Back's concession that Nestlé does not rely on these informal criticisms to support its decision to terminate him but on five incidences of formal discipline (the three write-ups, the suspension, and the termination). Further, Nestlé's records specifically note that the disciplinary actions are not related to Back's "dedication, effort, or personal work ethic" but to a failure of leadership. And as detailed above, Back does not successfully dispute the facts underlying his write-ups, counseling, suspension, and termination. Back therefore fails to show that a reasonable jury could conclude that Nestlé's decision to terminate Back was motivated not by its purported reasons, but rather by discriminatory animus.

Nor can Back show that Nestlé's purported reasons were insufficient to warrant terminating him. Back argues that he regards the incidents leading up to his termination as minor, but he concedes the facts underlying the incidents leading to his termination.

And Nestlé's evidence describes incidents that do not seem minor from Nestlé's perspective. Moreover, the dispositive question is whether a reasonable factfinder could conclude that the incidents are not sufficient from the employer's perspective to warrant terminating him. Back fails to make this showing.

Because Back fails to show a triable issue of material fact regarding pretext, he has not established a genuine dispute of material fact that age discrimination was the but-for cause of Nestlé's decision to terminate him. *See Provenzano*, 663 F.3d at 818. The district court therefore did not err in granting summary judgment to Nestlé.

## III. CONCLUSION

For all the above reasons, we **AFFIRM** the judgment of the district court.

———————————

**CONCURRENCE**

———————————

JAMES S. GWIN, District Judge, concurring.  I join part II.B.2 of Judge Stranch's opinion, which correctly concludes that Back offered insufficient circumstantial evidence of discrimination.  And I agree with her conclusion in part II.B.1 that the district court properly excluded Back's direct evidence of discrimination, if for the wrong reason.  I write separately to express my view that a straightforward application of the Federal Rules of Evidence compels the same result.

Back's "direct evidence" was nothing more than an out-of-court statement about an out-of-court statement:  Shelburne said that higher management said that the three oldest workers would be fired.  Higher management's statement, then, is hearsay within hearsay, and it's inadmissible absent a hearsay exclusion or exception for both Shelburne's and higher management's statements.  *See* Fed. R. Evid. 805.

Even assuming that Shelburne's statement falls within the "Opposing Party's Statement" hearsay exclusion in Federal Rule of Evidence 801(d)(2)(D), higher management's statement does not.  Rule 801(d)(2)(D) says that an opposing party's statement is not hearsay if it is offered against the opposing party and the party offering the statement shows that the statement was (1) "made by the [opposing] party's agent or employee" and (2) "on a matter within the scope of that relationship and while it existed."  But there's a caveat:  "The statement must be considered but does not by itself establish . . . the existence or scope of the [agent or employee] relationship."

Back failed to offer any evidence on the existence or scope of higher management's agency or employment relationship other than the higher-management statement itself.  Without *outside* evidence to support "higher management's" role, Back could not—and did not—lay the necessary foundation for admitting that statement.  *See* Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments) ("The burden is on the proponent to show that the material is admissible as presented or to explain the

admissible form that is anticipated."); Fed. R. Evid. 801 advisory committee's note (1997 Amendment); Fed. R. Evid. 104(a).

For this reason, the district court correctly excluded higher management's statement and, in the end, correctly granted summary judgment to Nestlé.