**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0481n.06

Nos. 14-1668/2468

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 01, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LAURI HUFFMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| SPEEDWAY LLC, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; and BLACK, District Judge.[*]

BOGGS, Circuit Judge. Plaintiff-Appellant Lauri Huffman appeals the grant of summary judgment to her former employer, Defendant-Appellee Speedway LLC. Speedway attempted to place Huffman on Family Medical Leave Act (FMLA) leave rather than accommodating the pregnancy-related work restrictions that her doctor identified. Huffman was unwilling to take leave, and refused to return FMLA paperwork. In response, Speedway terminated her employment for job abandonment, as she would neither fulfill the reasonable requirements of her job nor take the various types of leave offered to her. Huffman filed an action against Speedway for violation of the FMLA and for pregnancy discrimination under Michigan's Elliott-Larsen Civil Rights Act. The district court granted summary judgment to Speedway. We affirm.

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

## I.  Background

Huffman worked at Speedway's Vassar, Michigan store from July 2011 to May 2013.  She was initially hired as a customer-service representative and was promoted to shift leader in November 2011.  A shift leader's duties include ensuring the completion of each task listed on the Exceptional Customer Experience (ECE) worksheet.  Huffman would occasionally work at the store alone and so would have to complete these tasks by herself.

In November 2012, Huffman became pregnant and notified Speedway shortly thereafter.  On March 6, 2013, she presented Store Manager Jennifer Francis with a note from Dr. Walter Yee, her OB/GYN, indicating that she was unable to work any shift longer than 8 hours and must have a 15-minute break every 4 hours.  Francis forwarded the note to Speedway's Human Resource Director Richard Farran, who approved the requested accommodations.  On April 3, 2013, Huffman missed work due to pregnancy-related hip pain.  Dr. Yee examined Huffman on that date for the pain and instructed her in writing to refrain from "activities that may cause [her] to fall or drop something on [herself]."  Huffman relayed this instruction to Francis, who forwarded the information to Farran.

Acting on Farran's directions, Francis followed up with Huffman to discuss specific tasks that Huffman was uncomfortable performing because of her pregnancy.  Huffman identified the following tasks to Francis, which Francis forwarded to Farran via email:

- Taking out trash

- Leaning into the bottle-return bin

- Climbing ladders

- Continuous bending and squatting

- Standing for long periods of time

- Lifting heavy objects, including soda crates, propane tanks, and tea urns

Speedway directed Huffman to return to Dr. Yee on April 10 and have him evaluate her ability to perform job tasks. On a "Fitness for Duty" form, Dr. Yee recommended that Huffman limit herself to "LIGHT MEDIUM WORK," which meant that she should lift no more than 20 pounds and no more than 10 pounds on a frequent basis. Huffman could bend, squat, kneel, stand, and walk for short periods of time, but she should not climb. Huffman agreed that she was unable lift objects weighing over 20 pounds and could not climb. Dr. Yee also worked with Huffman to identify specific tasks on the ECE worksheet that "may be avoided for the duration of [Huffman's] pregnancy":

- Making "Speedy Tea" available each shift

- Sanitizing the "Speedy Tea" urn each day

- Cleaning coolers and cooler doors each shift

- Checking and emptying the inside and outside trash each shift

- Stocking the outside area each shift

- Cleaning baseboards each Monday

- Cleaning walls and windows each Sunday

- Cleaning the restroom each Sunday

- Cleaning cooler floor, door frames, and "under product" each Sunday

Huffman admitted that there were aspects of each task that she was unable to perform and that "they wouldn't get done" when she worked a shift alone.

Farran reviewed Dr. Yee's recommendations and determined that Speedway could not accommodate Huffman. Acting on Farran's direction, Francis told Huffman on April 11, 2013, that she could not return to work until she no longer had the restrictions identified by Dr. Yee.

Farran also told Francis to offer Huffman unpaid FMLA leave if she was eligible or else offer her unpaid personal leave. Though Huffman objected, Francis forwarded a leave-of-absence request to Leave Processor Jennifer Garret. Garret determined that Huffman was qualified for FMLA leave, but needed Huffman to complete paperwork to process the request. Garret emailed Huffman on April 16, 2013, asking her to return the necessary FMLA paperwork by May 4, 2013. Huffman received the paperwork on April 16 and emailed Farran to tell him that she objected to being forced to take leave and that she would not fill out the paperwork.

Huffman also called Garret on April 16, 2013, to explain that she was not yet ready to go on leave. Garret told Huffman that, if Huffman exhausted her twelve-week FMLA leave, she could apply for additional personal leave. But Garret did not provide any guarantees as to whether the personal-leave request would be approved or whether Huffman would be able to keep her shift-leader position after returning from leave. Garret also told Huffman that Speedway could not accommodate her pregnancy-related work restrictions and that Huffman could be terminated for job abandonment if she did not return the FMLA paperwork. After April 16, 2013, Huffman began to use vacation days so that she could continue to receive paychecks.

On May 7, 2013, three days after the FMLA-request deadline, Garret sent Huffman the following letter:

> On 4/16/13, a leave packet was sent to you for completion in connection with your Request for a Leave of Absence. As stated in the packet, your leave paperwork was due back to the Leave Department by 5/4/13. As of today, your paperwork has not been received. As such, FMLA leave for this period is **denied**. You may still be eligible for a personal leave of absence, but you must return your completed leave packet by **5/17/13**. **If Speedway does not receive your completed leave packet by this date, your employment may be terminated**.

Huffman received the letter on May 14, 2013, but did not reply. Speedway terminated Huffman's employment for job abandonment on May 29, 2013.

On June 4, 2013, Huffman filed a complaint in federal district court against Speedway, alleging (1) violation of her rights under the FMLA by forcing her to take involuntary leave and (2) pregnancy discrimination under Michigan state law. The district court analyzed Huffman's involuntary-leave claim under the interference theory of FMLA liability, and dismissed that claim as being unripe. The court also granted summary judgment to Speedway on the pregnancy-discrimination claim because it found that Huffman failed to present direct evidence of discrimination, and the only indirect evidence that Huffman presented was inadmissible hearsay.[1] Huffman timely appealed under Case No. 14-1668. Huffman then filed a *Hirsch* remand motion before the district court so that the court could consider her FMLA claim under the retaliation theory of FMLA liability.[2] The district court denied that motion, and Huffman filed a second appeal under Case No. 14-2468. We have consolidated Huffman's two appeals.

## II.     Standard of Review

We review de novo a district court's grant of summary judgment. *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005). Summary judgment is proper where, drawing all reasonable factual inferences in favor of the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a).

---

[1] The district court initially declined to exercise supplemental jurisdiction over Huffman's state-law pregnancy-discrimination claim. Speedway moved the district court to reconsider, pointing out that it had original—rather than supplemental—jurisdiction over the claim because the parties were diverse, Huffman had pleaded diversity jurisdiction, and the amount in controversy exceeded $75,000. The district court granted Speedway's motion, heard the pregnancy-discrimination claim on the merits, and granted summary judgment to Speedway.

[2] Federal Rule of Civil Procedure 60(b) provides that a court could relieve a party from final judgment because of an "excusable litigation mistake" or "a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (internal quotation marks omitted). A district court generally lacks jurisdiction to hear a Rule 60(b) motion while an appeal is pending. *Post v. Bradshaw*, 422 F.3d 419, 421 (6th Cir. 2005). But under *First Nat'l Bank of Salem, Ohio v. Hirsch*, an appellant seeking Rule 60(b) review could "file his motion in the District Court. If that court indicates that it will grant the motion, the appellant should then make a motion in [the court of appeals] for a remand of the case in order that the District Court may grant the motion[.]" 535 F.2d 343, 346 (6th Cir. 1976) (internal quotation marks omitted). If the district court denies the *Hirsch* motion, "the appeal will be considered in regular course." *Ibid.*

A district court's denial of a *Hirsch* motion is "essentially a denial of a motion under Fed. R. Civ. P. 60(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). "We review for abuse of discretion a district court's decision to deny a Rule 60(b) motion for relief from judgment." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 584 (6th Cir. 2014). We also review a district court's evidentiary rulings for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). Under the abuse-of-discretion standard, we reverse "only if we have a definite and firm conviction that the trial court committed a clear error of judgment." *JPMorgan Chase Bank*, 750 F.3d at 584 (internal quotation marks omitted).

## III. Analysis

## A. Violation of the FMLA

Huffman's Amended Complaint alleges that Speedway

> used FMLA against Plaintiff in an unlawful manner (conditioning her employment on having to apply for FMLA leave when she did not need to), such as to cause her the loss of her job and the denial of the opportunity to use FMLA when she would have needed FMLA leave at a later time after the delivery of her child, in violation of the Act.

Huffman further alleges that Speedway "violated [her] rights under the FMLA by terminating [her] employment for her refusal to take leave under the Act."

"The FMLA entitles an eligible employee to as many as twelve weeks of [unpaid] leave during any twelve-month period if the employee has a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Chandler v. Specialty Tires of Am. (Tennessee), Inc.,* 283 F.3d 818, 825 (6th Cir. 2002) (internal quotation marks omitted). A "period of incapacity due to pregnancy" can qualify as a "serious health condition." 29 C.F.R. § 825.115(b). "An employee is unable to perform the functions of the

position" if she is "unable to perform any one of the essential functions of the employee's position." *Id.* § 825.123(a).

There are two theories of FMLA liability against employers: the interference theory and the retaliation theory. The interference theory arises from 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." The retaliation theory arises from § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." The district court interpreted Huffman's complaint to have alleged a claim under only the interference theory and dismissed that claim as being unripe. Huffman argues on appeal that she stated both an interference claim and a retaliation claim.

### 1. Interference Claim

We turn first to Huffman's interference claim. Huffman argues that Speedway violated her rights under the FMLA by forcing her to take involuntary FMLA leave. While being forced to take unpaid leave has an effect similar to being suspended without pay, the statute does not grant employees the right to be free from suspension. Several of our sister circuits have therefore held that involuntary FMLA leave does not directly injure an employee's FMLA rights. *See e.g., Walker v. Trinity Marine Products, Inc*., 721 F.3d 542, 544–45 (8th Cir. 2013) *cert. denied*, 134 S. Ct. 1293 (2014); *Foster v. New Jersey Dep't of Transp.,* 255 F. App'x 670, 671 n.1 (3d Cir. 2007); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006).

We nonetheless recognize that involuntary FMLA leave has the potential to indirectly interfere with an employee's FMLA rights. An employer who forces an employee who does not have a job-restricting serious health condition—i.e., an employee who remains capable of

7

performing all essential job duties—to take FMLA leave may improperly exhaust the twelve weeks of leave to which the employee is statutorily entitled each year. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007); *see also Hicks v. Leroy's Jewelers, Inc.,* No. 98–6596, 2000 WL 1033029, at *3–4 (6th Cir. July 17, 2000). But the injury to the employee's FMLA rights would remain inchoate unless she develops a serious health condition within a year and requests FMLA leave. If the employer were to grant the employee the full twelve weeks of leave to which she is entitled—i.e., not counting the previous involuntary FMLA leave against her annual limit—the employee would not suffer a cognizable injury under the FMLA. Therefore, an involuntary-leave interference claim "ripens *only* when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Wysong*, 503 F.3d at 449 (emphasis added); *see also Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 488 (6th Cir. 2013) ("Because Latowski never sought to take FMLA leave in 2009, her claim never ripened and she cannot prove a prima facie case of FMLA interference."). In this case, Huffman never requested FMLA leave and so her involuntary-leave claim remains unripe. Accordingly, the district court properly dismissed Huffman's involuntary-leave claim.

## 2. Retaliation Claim

Huffman's second appeal argues that the district court abused its discretion in declining to address her FMLA claim under a retaliation theory. Though her Amended Complaint does not specifically allege retaliation, "a plaintiff ha[s] not waived a claim based on [either the retaliation or] the interference theory where the complaint alleged general violations of [the FMLA] that could apply both to interference and retaliation claims." *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335 (6th Cir. 2009). Therefore, "ambiguity on a plaintiff's [FMLA]

complaint does not . . . 'box plaintiffs into one theory or the other.'" *Ibid.* (quoting *Wysong*, 503 F.3d at 446). However, if the "essence" of a plaintiff's FMLA claim falls under only one of the two theories, the district court does not err in confining its analysis to only that theory. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012).

Huffman's complaint was neither general nor ambiguous. She specifically stated an involuntary-leave claim under the interference theory, alleging "denial of the opportunity to use FMLA when she would have needed FMLA leave at a later time." Though she also alleged that Speedway terminated her for her "refusal to take leave," that allegation did not state a retaliation claim. Because involuntary leave cannot by itself violate the FMLA, opposing involuntary leave is not protected conduct under the statute. Therefore, termination for refusing involuntary leave is not retaliation. Huffman expressly articulated an interference claim and failed to allege a retaliation claim. Accordingly, the district court did not abuse its discretion denying Huffman's *Hirsch* remand motion.

## B. Pregnancy Discrimination

Huffman brought a pregnancy-discrimination claim under Michigan's Elliott-Larsen Civil Rights Act (Elliott-Larsen Act), which prohibits workplace pregnancy discrimination. M.C.L. §§ 37.2201(d); 37.2202(1). A plaintiff may prove discrimination using direct or indirect evidence. *Sniecinski v. Blue Cross & Blue Shield of Mich.,* 666 N.W.2d 186, 192 (Mich. 2003).

### 1. Direct Evidence

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ibid.* (internal quotation marks and citations omitted); *see also Amini v. Oberlin College*, 440 F.3d 350, 359

(6th Cir. 2006). Huffman points to the FMLA paperwork that Speedway filled out and sent to her and to Speedway's leave policy as direct evidence of discrimination.

The FMLA paperwork that Garret filled out identified Huffman's reason for requiring FMLA leave as "birth of a child." Huffman argues that "birth of a child" misidentified the reason for FMLA leave because Huffman had not yet given birth and Speedway's policy categorized "[a]ny period of incapacity due to pregnancy" as a type of "serious health condition." According to Huffman, this shows that "Speedway was trying to invent reasons to place Huffman on leave," and therefore Speedway must have had an ulterior motive. Appellant's Br. (14-1668) at 37–38. But "birth of a child" was not a misidentification of the reason for Huffman's FMLA leave because Speedway's policy states that "FMLA leave may begin prior to the birth of your child if you are unable to work due to medical reasons." Therefore, pregnancy-related reasons for FMLA leave can be categorized both as "birth of a child" and as "serious health conditions" in the context of Speedway's FMLA policy.

Even if Speedway had misidentified the reason for Huffman's FMLA leave, the paperwork would not be direct evidence because we are not *required* to conclude that Speedway acted with discriminatory motive. The existence of an ulterior motive that Speedway was trying to cover up with an "invented reason" must be inferred. A second inference is required to conclude that the ulterior motive was pregnancy discrimination.

Nor is Speedway's leave policy direct evidence of discrimination. The policy provides that an employee who is unable to perform job functions due to a serious health condition should be given a leave of absence and does not differentiate between conditions that are pregnancy-related and those that are non-pregnancy-related. "Pregnancy-blind policies of course can be tools of discrimination. But challenging them as tools of discrimination requires evidence and

inference beyond such policies' express terms." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 641 (6th Cir. 2006), *abrogated on other grounds by Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338 (2015).

## 2. Indirect Evidence

Under the indirect-evidence framework, Huffman must proceed using the *McDonnell Douglas* burden-shifting approach. *Sniecinski*, 666 N.W.2d at 193 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). This approach allows "a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow v. Century 21 Great Lakes, Inc*., 620 N.W.2d 836, 837 (Mich. 2001). To establish a prima facie case of pregnancy discrimination, Huffman must establish that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v. Michigan Bell Tel. Co.*, 568 N.W.2d 64, 68 (1997). The parties dispute the fourth element only.

Huffman argues that she satisfies the fourth element because Speedway accommodated another employee, Chelsea Genovese, for a knee injury that restricted Genovese's work duties. Appellant's Br. at 47. But the only evidence that she presents in support of this allegation is her own testimony that she heard about Genovese's injury and accommodation from three former co-workers at the Vassar, Michigan store, one of whom was Genovese.[3] The district court held that the co-workers' statements were inadmissible hearsay. *See* Fed. R. Evid. 801. Huffman argues on appeal that the statements were admissible under the party-admission exception to hearsay because all three declarants were Speedway employees.

---

[3] In her deposition, Huffman referred to Genovese as "Genovieve."

11

In diversity cases, the admissibility of evidence is governed by the Federal Rules of Evidence. *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir. 1990). Under Federal Rule of Evidence 801(d)(2)(D), an out-of-court statement is not hearsay if it is offered against a party and "was made by the party's agent or employee on a matter *within the scope of that relationship and while it existed.*" (Emphasis added). Because the declarants did not work in Speedway's human-resources department and were not involved in making accommodation decisions, their statements did not concern a matter in the scope of their employment. *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

Huffman cites *Back v. Nestlé USA, Inc.*, 694 F.3d 571 (6th Cir. 2012), to argue that "the fact that none of these Speedway employees were tied to the actual decision-making is inconsequential as to whether or not [their statements] were party admissions." Oral Argument at 13:47, *Huffman v. Speedway*, No. 14-1668 (6th Cir. argued June 11, 2015). Huffman is mistaken. *Back* involved the out-of-court statement of a human-resources director about the termination of an employee. 694 F.3d at 577. Even though the director was not involved in the specific termination decision that was the subject of his out-of-court statement, we held that his statement was a party admission because termination decisions generally fell within the scope of his employment. *Ibid.; see also Carter v. Univ. of Toledo*, 349 F.3d 269, 276 (6th Cir. 2003). In contrast, accommodation decisions and other human-resource issues were not within the scope of employment of any of Huffman's declarants. Their statements therefore were not party admissions, and so the district court did not abuse its discretion in excluding these statements as hearsay. *See Jacklyn*, 176 F.3d at 927 ("Hearsay evidence may not be considered on summary judgment").

While Speedway's decision to place a pregnant worker with significant work restrictions on involuntary leave may appear harsh, Huffman presents neither direct nor indirect evidence that Speedway did not treat all of its workers with job-restricting health conditions with equal severity. Therefore, she fails to establish a prima facie claim of pregnancy discrimination.

## IV.    Conclusion

Huffman's FMLA claim fails because she never exercised her right to take medical leave under the Act. Her pregnancy-discrimination claim fails because she presents no evidence of discriminatory motive. Accordingly, we AFFIRM the district court's judgment.